IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **PAUL E. KIRBY,** | * | |
| *Plaintiff,* | * | |
| v. | * | Civil Case No: 1:24-cv-02424-JMC |
| **UNITED STATES,** | * | |
| *Defendant.* | * | |
| | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

## **MEMORANDUM OPINION AND ORDER**

Plaintiff, Paul E. Kirby, filed the present action on August 20, 2024, asserting claims under the Federal Tort Claims Act ("FTCA") stemming from his employment with the United States Postal Service ("USPS"). (ECF No. 1). Defendant[1] filed a Motion to Dismiss in response to the Complaint on November 14, 2024, (ECF No. 16),[2] which the Court denied as moot after Plaintiff amended his Complaint as a matter of right on December 3, 2024. (ECF No. 17; ECF No. 32); *see also* Fed. R. Civ. P. 15(a)(1)(B). Plaintiff subsequently filed a Second Amended Complaint, with Defendant's consent, on January 7, 2025. (ECF No. 26; ECF No. 27); Fed. R. Civ. P. 15(a)(2). Defendant again filed a Motion to Dismiss, (ECF No. 28), which was mooted after the Court

---

[1] Plaintiff named "Louis DeJoy, Postmaster General, United States Postal Service" as the sole defendant in his original complaint. (ECF No. 1). He then added Kaylor, Kami Hoffman, and Sean O'Donnell as defendants in his Amended Complaint, (ECF No. 17), but omitted them from his Second Amended Complaint. (ECF No. 27). This Court explained in its March 28, 2025 memorandum opinion and order granting Plaintiff's Motion for Leave to File a Third Amended Complaint that the proper defendant in an FTCA action is the United States. (ECF No. 32 at 7-8) (citing *Chang-Williams v. Dep't of the Navy*, 766 F. Supp. 2d 604, 608 (D. Md. 2011)) ("The FTCA provides for liability solely against the United States, and explicitly states that federal agencies, like USPS, are not amenable to suit under its provisions.").

[2] The Motion to Dismiss filed at ECF No. 16 is technically a renewed motion. Defendant first filed a motion to dismiss on November 13, 2024, which the Court denied without prejudice pursuant to the Court's direct assignment program, under which the parties are precluded from filing dispositive motions until all parties have consented to the undersigned jurisdiction, or the case is reassigned to a District Judge. (ECF No. 10; ECF No. 11).

granted Plaintiff's Motion for Leave to File a Third Amended Complaint. (ECF No. 32). Currently pending before the Court is Defendant's Motion to Dismiss Plaintiff's Third Amended Complaint. (ECF No. 39). The motion has been fully briefed, (ECF No. 42; ECF No. 43), and no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2023). For the reasons set forth herein, Defendant's Motion to Dismiss shall be GRANTED.

I. BACKGROUND

a. Plaintiff's 2022 Litigation

Plaintiff filed a separate action against Louis DeJoy, the Postmaster General of the United States Postal Service, on August 31, 2022 asserting two claims: (1) discrimination based on Plaintiff's age, in violation of the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 623(a)(1); and (2) unlawful retaliation in violation of Title VII of the 1964 Civil Rights Act ("Title VII"), 42 U.S.C. §§ 2000e-2000e-17. *Kirby v. DeJoy*, No. 1:22-cv-02197-JMC, 2023 WL 6976069, at *1 (D. Md. Oct. 23, 2023), *aff'd*, 2024 WL 4262744 (4th Cir. Sept. 23, 2024) ("*Kirby I*").[3] *Kirby I* was also assigned to the undersigned, and on October 23, 2023, this Court issued a memorandum opinion and order granting Defendant's motion to dismiss, which was later affirmed by the Fourth Circuit. *Id.* The facts of *Kirby I* pertinent to the present litigation are set forth below.

In the timeframe relevant to Plaintiff's claims in *Kirby I*, Plaintiff was a fifty-seven (57) year-old mail carrier employed at the Frostburg, Maryland, Post Office. *Id.* "In addition to his typical duties as mail carrier, Plaintiff also served as the National Association of Letter Carriers'

---

[3] Because Defendant contends the instant case is barred by *res judicata*, the Court may take judicial notice of facts from the 2022 proceeding provided that Defendant's res judicata arguments do not raise any disputes of fact. *Q Int'l Courier, Inc. v. Smoak*, 441 F.3d 214, 216 (4th Cir. 2006) ("When entertaining a motion to dismiss on the ground of res judicata, a court may take judicial notice of facts from a prior judicial proceeding when the res judicata defense raises no disputed issue of fact.") (citing *Andrews v. Daw*, 201 F.3d 521, 524 n.1 (4th Cir. 2001)).

("NALC") Branch President for Local 638 Cumberland, Maryland, and on the NALC Maryland/District of Columbia State Executive Board to represent bargaining unit members on grievances at the Frostburg, Maryland, office." *Id.* Plaintiff's allegations of discriminatory conduct primarily involved the local Postmaster, Kelly Kaylor. *Id.*

On August 14, 2018, Plaintiff and Kaylor met for a telephone conference to discuss an unrelated grievance. *Id.* at *2. Plaintiff alleges that Kaylor told Plaintiff "she would buy [Plaintiff] a fake set of lips and a big fat ass and help [Plaintiff] out the door," which Plaintiff interpreted as a reference to his age and inability to complete his mail carrier route as efficiently as younger employees. *Id.* Later that same day, Plaintiff's supervisor informed him that he was being put on "Emergency Placement" due to allegations he had placed his hands around Kaylor's neck during the meeting. *Id.* Plaintiff filed an Equal Employment Opportunity Commission ("EEOC") complaint against DeJoy and Kaylor later that month, although the basis of the complaint was not made clear in the prior litigation. *Id.*

Plaintiff was provided with a Notice of Removal on October 5, 2018 following the August meeting with Kaylor. *Id.* A settlement was ultimately reached in February 2019, under which Plaintiff withdrew his EEOC claim, the Notice of Removal was reduced to a Letter of Warning, and Plaintiff was permitted to return to work. *Id.* Additionally, Plaintiff was granted all backpay from his Emergency Placement and was permitted to adjust his postal route. *Id.* According to Plaintiff, Kaylor "stormed out of the office upon learning of the settlement and attempted to file a restraining order against Plaintiff before filing second degree assault charges against Plaintiff on February 5, 2019, regarding the August 14, 2018, choking incident." *Id.*

As the undersigned explained in *Kirby I*, the crux of Plaintiff's Second Amended Complaint in that action was that, following the February 2019 settlement, Kaylor "subjected

3

Plaintiff to ridicule and adverse employment actions" due to Plaintiff's age, his inability to complete his carrier route within eight hours, and in retaliation for the settlement. *Id.* at *2-3. Kaylor's conduct purportedly included: frustrating the processing of Plaintiff's backpay; refusing to adjust Plaintiff's mail route; removing the driving portions of Plaintiff's mail route; lodging disciplinary complaints against Plaintiff alleging that Plaintiff was claiming unauthorized overtime and his own conduct prevented him from completing his route on time, despite Plaintiff having permission to finish his route within nine and a half hours; instructing Plaintiff to give up the mounted portions of his mail route because other carriers could get it done faster; refusing to allow Plaintiff to rescind a sick day despite there being a practice of permitting employees to rescind a sick day if they did so before 8:00 a.m.; and threatening Plaintiff by stating she would withdraw the assault charges if Plaintiff retired. *Id.*

Plaintiff "filed a formal Complaint of Discrimination in the Postal Service on November 21, 2019, which was subsequently supplemented through Plaintiff's contacts with the EEOC in July and August 2020." *Id.* at *3. The EEOC issued a decision in favor of the Postal Service, and Plaintiff's 2022 lawsuit followed. *Id.* The undersigned ultimately dismissed *Kirby I* on the basis that Plaintiff failed to allege a materially adverse employment action as required under the ADEA and Title VII. *Id.* at *6. The Court further explained that even if Plaintiff had suffered an adverse employment action, he failed to plausibly allege that such action was the result of his age and/or his engagement in a protected activity. *Id.* at *7-9.

    b. <u>The Present Case</u>

        i. <u>Factual Background</u>

Plaintiff initiated the present case on August 20, 2024. (ECF No. 1). In Plaintiff's Third Amended Complaint, the operative complaint in this matter, Plaintiff asserts a single count against

4

Defendant under the FTCA, which is styled as "Wrongful Misconduct Intentional Failure to Act." (ECF No. 33). Plaintiff alleges that on August 25, 2021, Kaylor rammed a mailcart into him, causing him to fall into a metal cage and injuring his arm, foot, ankle and leg. *Id.* at 15-16. Plaintiff thereafter "filed a worker's compensation claim with the Department of Labor" for his injuries and received weekly wage payments as a result. *Id.* at 17. Plaintiff additionally contends that he suffered emotional and mental health damages stemming from the incident, as well as interference with his general contracting business. *Id.* at 17-18.

Plaintiff's Third Amended Complaint seeks redress not for the assault itself, but for Defendant's failure to stop the assault from occurring. *See generally id.* Much of the Third Amended Complaint restates the same facts set forth in *Kirby I*, including Plaintiff's account of the August 14, 2018 meeting where Kaylor allegedly said she "she would buy [Plaintiff] a fake set of lips and a big fat ass and help [Plaintiff] out the door," after which Kaylor accused Plaintiff of placing his hands around her neck. *Id.* at 6. Plaintiff again details the October 2018 Notice of Removal and subsequent settlement in February 2019, as well as Kaylor's purported displeasure with the settlement agreement and decision to file assault charges against Plaintiff. *Id.* at 7-8. The allegations occurring after the February 2019 settlement agreement also mirror *Kirby I*, including Plaintiff's claims that Kaylor did not process his backpay, interfered with his route adjustment, removed the driving portions of Plaintiff's mail route, refused to allow him to rescind a sick day (contrary to office practice), lodged baseless disciplinary complaints against Plaintiff, and told Plaintiff she would withdraw the criminal assault charges if Plaintiff agreed to retire. *Id.* at 9-15. Plaintiff maintains that while these facts were part of *Kirby I*, they are pled in the 2024 litigation "for the purpose of showing USPS et al had notice of the issues leading up to" the August 25, 2021 assault. *Id.* at 4.

ii. Procedural History

Plaintiff filed the instant action on August 20, 2024 pursuant to the FTCA. (ECF No. 1). He originally named "Louis DeJoy, Postmaster General, United States Postal Service" as the sole defendant in his Complaint. *Id.* Defendant filed a Motion to Dismiss in response to the Complaint, which was mooted after Plaintiff amended his complaint as a matter of right on December 3, 2024. (ECF No. 17; ECF No. 32); *see also* Fed. R. Civ. P. 15(a)(1)(B). Plaintiff thereafter filed a Second Amended Complaint, with the consent of Defendant, on January 7, 2025. (ECF No. 26; ECF No. 27); *see also* Fed. R. Civ. P. 15(a)(2). Defendant filed a second Motion to Dismiss, (ECF No. 28), which the Court denied as moot after granting Plaintiff's Motion for Leave to File a Third Amended Complaint. (ECF No. 32).

Currently pending before the Court is Defendant's Motion to Dismiss Plaintiff's Third Amended Complaint. (ECF No. 39). Plaintiff raises five arguments in support of dismissal: (1) Plaintiff's Third Amended Complaint is barred by *res judicata*; (2) the Court lacks subject matter jurisdiction because Plaintiff's claim was not administratively exhausted; (3) the Federal Employees' Compensation Act ("FECA") precludes recovery; (4) if Plaintiff's complaint is construed as an intentional tort claim, the United States has sovereign immunity; and (5) if Plaintiff's complaint is construed as a negligent supervision claim, it fails as a matter of law. *Id.*[4]

## II.   LEGAL STANDARDS

---

[4] Because the Court finds that dismissal is necessary for lack of subject matter jurisdiction under FECA, the undersigned declines to reach Defendant's last two arguments. Both require the Court to analyze the nature of Plaintiff's claim of "Wrongful Misconduct Intentional Failure to Act" and specifically to determine if it is barred by the intentional tort exception to the FTCA, or alternatively that it should be treated as a claim for negligent supervision. The undersigned questions whether Plaintiff asserts a cognizable cause of action at all, and Plaintiff further confuses the issue by describing his claim as an intentional tort at times, and as a claim sounding in negligence at others. In any event, because alternative grounds for dismissal, no determination on these issues is necessary.

6

   a. <u>Motions to Dismiss Under Federal Rule 12(b)(1)</u>

Because Defendant contends that Plaintiff failed to exhaust administrative remedies and is precluded by FECA, the Motion to Dismiss will be reviewed in part under Rule 12(b)(1) of the Federal Rules of Civil Procedure as a subject matter jurisdiction challenge. *Farmer v. Marshall*, No. GJH-21-01295, 2022 WL 228020, at *2 (D. Md. Jan. 25, 2022). "Under Rule 12(b)(1), the plaintiff bears the burden of proving, by a preponderance of the evidence, the existence of subject matter jurisdiction." *Id.* (citing *Davis v. Thompson*, 367 F. Supp. 2d 792, 799 (D. Md. 2005)). A motion to dismiss filed pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction may be brought in one of two ways: "First, it may be contended that a complaint simply fails to allege facts upon which subject matter can be based." *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982). "Second, it may be contended that the jurisdictional allegations of the complaint were not true." *Id.* In other words, a Rule 12(b)(1) motion may proceed as a facial challenge or a factual challenge. *Effland v. Balt. Police Dep't*, No. MJM-23-1494, 2024 WL 4349690, at *3 (D. Md. Sept. 30, 2024) (quoting *Mayor & City Council of Balt. v. Trump*, 416 F. Supp. 2d 452, 479 (D. Md. 2019)).

"In a facial challenge, 'the facts alleged in the complaint are taken as true, and the motion must be denied if the complaint alleges sufficient facts to invoke subject matter jurisdiction.'" *Id.* (citations omitted). In a factual challenge, the court may weigh evidence outside the pleadings to "determine whether it has jurisdiction over the case before it." *Agbara v. Prince George's Cnty. Pub. Schs.*, No. TJS-20-0306, 2020 WL 7425298, at *4 (D. Md. Dec. 18, 2020) (citing *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991)); *Est. of Bryant v. Balt. Police Dep't*, No. ELH-19-384, 2020 WL 673571, at *8 (explaining that when weighing a factual challenge under 12(b)(1), the court "may regard the pleadings as mere evidence

on the issue and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment.") (citation omitted)). A 12(b)(1) motion should be granted "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Id.* (quoting *Richmond*, 945 F.2d at 768).

    b. <u>Motions to Dismiss Under Federal Rule 12(b)(6)</u>

The purpose of Federal Rule of Civil Procedure 12(b)(6) "is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)) (internal quotations omitted). To survive a Rule 12(b)(6) motion to dismiss, "detailed factual allegations are not required, but a plaintiff must provide the grounds of his entitlement to relief," which requires "more than labels and conclusions, or a formulaic recitation of the elements of a cause of action." *Petry v. Wells Fargo Bank, N.A.*, 597 F. Supp. 2d 558, 561–62 (D. Md. 2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007)) (internal quotations omitted). In considering a motion to dismiss, "the Court must accept the complaint's allegations as true, and must liberally construe the complaint as a whole." *Humphrey v. Nat'l Flood Ins. Program*, 885 F. Supp. 133, 136 (D. Md. 1995) (internal citations omitted). The Court must also construe the facts and reasonable inferences from the facts in the light most favorable to the plaintiff. *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997); *see also Petry*, 597 F. Supp. 2d at 562 ("Once a claim has been stated adequately . . . it may be supported by showing any set of facts consistent with the allegations in the complaint.") (quoting *Twombly*, 550 U.S. at 546).

**III.** **ANALYSIS**

  I. <u>Plaintiff sufficiently exhausted his administrative claims.</u>

The Court will begin by addressing Defendant's argument that this Court lacks subject matter jurisdiction over Plaintiff's claim because it was not administratively exhausted. (ECF No. 39-1 at 9. "As a general matter, the United States is immune from suit unless it waives that immunity." *Clendening v. United States*, 19 F.4th 421, 426 (4th Cir. 2021) (quoting *Sanders v. United States*, 937 F.3d 316, 327 (4th Cir. 2019)). The FTCA provides a limited waiver of that immunity "for damages suits related to certain actions by federal employees that occur within the scope of their employment." *Est. of Van Emburgh ex rel. Van Emburgh v. United States*, 95 F.4th 795, 800 (4th Cir. 2024) (citing 28 U.S.C. §§ 1346(b)(1), 2674). A plaintiff seeking relief under the FTCA must satisfy certain jurisdictional prerequisites, including administrative exhaustion. *Id.* (first citing *Henderson v. United States*, 785 F.2d 121, 123 (4th Cir. 1986); and then citing 28 U.S.C. § 2675). The administrative exhaustion requirement consists of three elements. *Id.* "First, a plaintiff must 'present [their] claim to the appropriate Federal agency[.]" *Id.* (quoting 28 U.S.C. § 2675(a)) (alterations in original). This is typically satisfied by filing a Standard Form 95 ("SF-95") or some other written notification with the relevant agency. *Church v. Clayton*, No. 24-180-BAH, 2024 WL 3554926, at *3 (D. Md. July 23, 2024) (citations omitted). Second, a plaintiff must state the sum certain they are seeking in the presentation of their claim to the agency. *Est. of Van Emburgh*, 95 F.4th at 801 (citing 28 U.S.C. § 2675(b)). Third, a "plaintiff must wait either for the claim to be 'finally denied by the agency' or for the agency to fail 'to make final disposition of [the] claim within six months after it is filed.'" *Id.* (citing 28 U.S.C. § 2675(a)). Each of these requirements is jurisdictional and may not be waived. *Id.* (citations omitted).

Defendant challenges only the first administrative exhaustion requirement, contending that Plaintiff's SF-95 does not give adequate notice of his "Wrongful Misconduct Intentional Failure

9

to Act" claim. (ECF No. 39-1 at 10). Plaintiff provided the following information under the "basis of claim" section on his SF-95:

> The Postmaster has attacked and assaulted the Plaintiff on August 25, 2021 causing the Plaintiff to suffer a fractured ankle. USPS has been on notice of the Postmasters [sic] aggressive behavior including violent acts against the claimant and has not taken any steps to prevent the harm. The claimant suffered a fractured ankle, torn/sprained ligaments, pain, suffering, loss of consortium, loss [of] wages, loss of benefits, loss of retirement earnings, loss [of] business revenues, out of pocket medical and legal costs, emotional distress, continued counseling, punitive and other damages. Postmaster intentionally and willfully assaulted the claimant with a mail distribution cart. Striking the ankle of the claimant with the base of the cart. The Postmaster intentionally shoved the cart into claimants [sic] ankle while screaming profanity at the claimant. The Postmaster had previously fabricated charges against the claimant that were dismissed.

(ECF No. 39-2).[5] Defendant avers that Plaintiff's references to the Postal Service's "notice of the Postmaster's aggressive behavior" and failure to "take[] any steps to prevent the harm" does not provide sufficient notice of a claim based on Defendant's purported failure to prevent Kaylor from assaulting Plaintiff. (ECF No. 39-1 at 10). Defendant further notes the SF-95 contains no facts underlying the Postal Service's purported notice of Kaylor's conduct, such as the identities of individuals with knowledge of Kaylor's "aggressive behavior," or the dates that such notice occurred. *Id.* Additionally, Defendant asserts that the SF-95 exclusively revolves around an assault claim rather than a claim predicated on failure to prevent the assault, and argues that dismissal is appropriate in cases where "a putative plaintiff assert[s] one cause of action an SF-95 but an entirely different cause of action, comprised of unique elements, in a subsequently filed federal suit." *Id.* at 11 (citing *Lewis v. United States*, Case No. DKC 22-2899, 2024 WL 895112, at *3 (D. Md. Feb. 29, 2024)).

---

[5] As noted, the Court may weigh evidence outside the pleadings when considering a motion to dismiss under Rule 12(b)(1) challenging the factual basis for the Court's jurisdiction. *Agbara*, 2020 WL 7425298 at *4 (citations omitted).

A claim is properly "presented" for the purposes of the FTCA's administrative exhaustion requirement "if it gives the government adequate notice to properly investigate the underlying incident and places a 'sum certain' on the claim's value." *Starr v. United States*, 262 F. Supp. 2d 605, 607 (D. Md. 2003).[6] Courts in this District have stressed that "[t]he FTCA was not intended as a trap for the 'unwary claimant,' and 'the purpose of 28 U.S.C. § 2675(a) is to provide notice to the relevant federal agency of claims, not to put up a barrier of technicalities to defeat their claims.'" *Id.* (quoting *Munger v. United States*, 116 F. Supp. 2d 672, 676 (D. Md. 2000)). The Court therefore concludes that Plaintiff's SF-95 provided sufficient information to allow the government to properly investigate the events leading up to the alleged assault, as well as the assault itself. Further, the undersigned is not persuaded that Plaintiff's SF-95 form confines him solely to a claim for assault, as Defendant suggests.[7] Rather, the FTCA's administrative exhaustion requirement does not mandate "the claimant to enumerate any specific causes of action." *Neal v. United States*, 599 F. Supp. 3d 270, 312 (D. Md. 2022); *see also Glover v. United States*, 996 F. Supp. 2d 372, 377 (D. Md. 2014) ("[E]xhaustion requires that the claim, but not necessarily the claimant or the theory of recovery, be presented to the agency.").

---

[6] It is undisputed that Plaintiff asserted a sum certain for the value of his claim on his SF-95. (ECF No. 39-2).

[7] Defendant cites a number of cases in support of this argument. (ECF No. 39-1 at 11). After careful review, the undersigned concludes these cases are largely distinguishable from the instant case, either because the plaintiff in the case cited brought a claim based on entirely different facts than those asserted in their SF-95, *see, e.g.*, *Benally v. United States*, No. 13-CV-06040-MV-SMV, 2016 WL 3200125, at *4 (D.N.M. May 20, 2016), *aff'd*, 735 F. App'x 480 (10th Cir. 2018) (holding statement in SF-95 that surgery was performed negligently did not provide notice of claim for negligent *post-operative* care), or because the plaintiff brought claims pursuant to a different source of authority than referenced in their SF-95. *See Lewis*, 2024 WL 895112 at *3 (dismissing case for lack of subject matter jurisdiction where SF-95 specifically alleged violations of plaintiff's rights under the Ninth Amendment and the Privacy Act, but subsequent FTCA lawsuit asserted common law torts of intentional infliction of emotional distress and invasion of privacy). By contrast, Plaintiff's claims arise from the same set of facts asserted in his SF-95, and he did not invoke and particular source of authority. Defendant's citation to *Lassic v. United States* is more on point. No. 14-cv-9959 (KBF), 2015 WL 5472946 (S.D.N.Y. Sept. 16, 2015), *aff'd*, 668 F. App'x 395 (2d. Cir. 2016). In *Lassic*, the Southern District of New York held the plaintiff failed to exhaust administrative remedies for her lack of informed consent and negligent hiring claims because the "[p]laintiff's SF 95 filing [was] silent as to both…claims." *Id.* at *4. However, as discussed, Plaintiff's SF-95 *does* allege facts relevant to a claim premised on the Postal Service failing to prevent the August 2021 assault—specifically, that the Postal Service had prior notice of Kaylor's purportedly aggressive behavior.

In fairness to Defendant, it is not entirely clear what Plaintiff's claim for "Wrongful Misconduct Intentional Failure to Act" entails or the elements of which it consists. This complicates the question of what information would give sufficient notice to allow the government to properly investigate Plaintiff's claims. Plaintiff's contradicting assertions that the claim is grounded in negligence, while also characterizing it as an intentional tort, further confuses the issue. *Compare* (ECF No. 33 at 3) ("The Plaintiff now brings this federal tort claim in negligence.") *with* ECF No. 42-1 at 8 ("[The Postal Service's] misconduct appears to be intentional on its face because of the numerous acts that led up to the August 25, 2021, [assault]…would lead a reasonable person to decide this was a foreseeable outcome."). At the very least, however, it is apparent that Plaintiff's claim rests on the Postal Service's failure to prevent the August 2021 assault from occurring, rather than on the assault itself. Plaintiff's SF-95 sufficiently alerted the Postal Service to the possibility that his claim would be predicated on more than the assault by referencing the Postal Service's "notice of the Postmaster's aggressive behavior" and failure to "take[] any steps to prevent the harm" such that an investigation into the underlying incident was possible. *See Neal*, 599 F. Supp. 3d at 312-13 (finding plaintiff's administrative claim gave adequate notice to government of incidents giving rise to FTCA suit such that negligent supervision claim could proceed, although "plaintiff did not expressly discuss defendant's negligent hiring, supervision, and/or retention in her administrative claim.") The Court therefore holds that Plaintiff exhausted his administrative claim under the FTCA and declines to dismiss Plaintiff's complaint on this basis.

II. <u>FECA precludes Plaintiff's recovery for claims arising from his alleged August 25, 2021 injuries.</u>

Defendant next argues that Plaintiff has already received workers compensation benefits under FECA for his injuries from the August 25, 2021 assault and is therefore precluded from

recovering further. (ECF No. 39-1 at 12). "In 1916, Congress enacted FECA to provide benefits to federal employees injured or killed in the course of performing their duties." *Butt v. Williams*, No. 20-2318-BAH, 2023 WL 5404073, at *10 (D. Md. Aug. 22, 2023) (quoting *Noble v. United States*, 216 F.3d 1229, 1234 (11th Cir. 2000) (citation omitted). FECA "provides a comprehensive system of compensation for federal employees who sustain work-related injuries," and was amended in 1949 "expressly to provide that FECA is the federal employee's *exclusive* remedy against the federal government for on-the-job injuries." *Id.* (first quoting *United States v. Lorenzetti*, 467 U.S. 167, 168 (1984); and then quoting *Noble*, 216 F.3d at 1234) (emphasis in original). In essence, federal employees may receive immediate compensation for workplace injuries through FECA, but in exchange, they forfeit the right to sue the government. *Id.*; *see also Lockheed Aircraft Corp. v. United States*, 460 U.S. 190, 194 (1983) ("In enacting this provision, Congress adopted the principal compromise—the 'quid pro quo'—commonly found in workers' compensation legislation: employees are guaranteed the right to receive immediate, fixed benefits, regardless of fault and without need for litigation, but in return they lose the right to sue the Government.").

The Department of Labor's decision to allow or deny payment under FECA is both "final and conclusive for all purposes and with respect to all questions of law and fact[,] and "not subject to review by another official of the United States or by a court by mandamus or otherwise." 5 U.S.C. § 8128(b). Accordingly, federal courts have no jurisdiction where FECA applies. *Diaz v. United States*, No. ELH-21-1547, 2023 WL 4764579, at *7 (D. Md. July 26, 2023) (quoting *Southwest Marine, Inc. v. Gizoni*, 502 U.S. 81, 90 (1991)) ("[F]ederal courts are left with 'no jurisdiction over FTCA claims where the Secretary determines that FECA applies.'"); *see also Metz v. United States*, 723 F. Supp. 1133, 1137 ("Once an injury is found to fall within the coverage

13

of FECA, its remedies are exclusive and no other claims can be entertained by the court."). Of particular relevance here, FECA precludes recovery not only for "those damages sought in the FECA claim; it applies to claims arising out of the same incident, even if the damages sought are not identical." *Id.* (citing *Metz*, 723 F. Supp. at 1137).

Defendant notes that Plaintiff states in his Second Amended Complaint he submitted a claim for workers' compensation benefits for his injuries following Kaylor's August 25, 2021 alleged assault and received weekly wages as a result. (ECF No. 39-1 at 13). Specifically, Plaintiff indicates:

> The [P]laintiff filed a workers['] compensation claim with the Department of Labor and [I]ndustry for the injury…The [D]efendant did not dispute that the [P]laintiff suffered a compensable injury. The Department of Labor and [I]ndustry directed the [D]efendant to pay the weekly wage to the [P]laintiff…After numerous inquiries and complaints filed by the [P]laintiff with the Department of Labor, the [D]efendant finally began to pay the weekly compensable rate.

(ECF No. 33 at 17) (paragraph numbers omitted). Plaintiff does not dispute that he received compensation for his injuries under FECA. (ECF No. 42-1 at 7-8). Instead, he maintains that "Wrongful Misconduct is an exception to the US Dept of Labor Workers Compensation exclusive remedy as an intentional tort resulting in injury." *Id.* at 8. Plaintiff cites no authority for this statement in his Opposition, *id.*, but he refers to *Johnson v. Mountaire Farms of Delmarva, Inc.* in his Third Amended Complaint, for the same proposition. (ECF No. 33 at 3). *Johnson*, however, involves the interpretation of Maryland's Workmen's Compensation Act and is inapplicable to the instant matter. *See Johnson v. Mountaire Farms of Delmarva, Inc.*, 503 A.2d 708, 710-11 (Md. 1986). The Court's review of federal case law has not revealed any similar exception.

As discussed, "FECA serves as 'a substitute for the whole of the claim that, but for it, would have arisen under the Tort Claims Act.'" *Butt*, 2023 WL 5404073 at *10 (quoting *Spinelli*

14

*v. Goss*, 446 F.3d 159, 161 (D.C. Cir. 2006) (citation omitted)); *see also Sullivan v. United States*, No. CKK-5-1418, 2006 WL 8451987, at *2 (D.D.C. June 22, 2006) ("As such, if FECA applies to a particular claim for injuries, a tort action brought against the United States arising out of the same injuries is preempted and a federal court may not hear the case for lack of jurisdiction."). Plaintiff's "Wrongful Misconduct Intentional Failure to Act" claim undeniably arises out of the August 25, 2021 alleged assault.[8] Accordingly, because Plaintiff received benefits under FECA for injuries sustained from the alleged assault, this Court lacks subject matter jurisdiction over Plaintiff's claim. Plaintiff's Third Amended Complaint will therefore be dismissed.

   III.   Even if the Court did not lack subject matter jurisdiction, Plaintiff's claim would be barred by *res judicata*.

The Court will briefly address the issue of whether Plaintiff's claim would additionally be barred by *res judicata*. Under the doctrine of *res judicata*, also known as claim preclusion, "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Pueschel v. United States*, 369 F.3d 345, 354 (4th Cir. 2004) (quoting *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398 (1981)). *Res judicata* "protects litigants against repetitive litigation, and it conserves judicial resources…[m]ore broadly, it increases confidence in the judicial system by avoiding inconsistent results and ensuring that private disputes have final, settled outcomes." *Serna v. Holder*, 559 F. App'x 234, 237 (4th Cir. 2014) (first citing *Laurel Sand & Gravel, Inc. v. Wilson*, 519 F.3d 156, 161-62 (4th Cir. 2008); then citing 18 Charles Alan Wright et al., *Federal Practice and Procedure* § 4403 (2d ed. 2002)). A claim is precluded if the following elements are established:

> 1) the prior judgment was final and on the merits, and rendered by a court of competent jurisdiction in accordance with the requirements of due process; 2) the

---

[8] Plaintiff concedes this point in his Third Amended Complaint. (ECF No. 33 at 3) ("This case arises out of an assault by the postmaster…").

> parties are identical, or in privity, in the two actions; and, 3) the claims in the second matter are based upon the same cause of action involved in the earlier proceeding.

*Id.* (quoting *Pittston v. United States*, 199 F.3d 694, 704 (4th Cir. 1999)).

Here, only the third element is disputed.[9] Defendant contends that Plaintiff's current suit is precluded by *Kirby I*, arguing "[e]ven a cursory reading of the Third Amended Complaint reveals that there is nothing new in this case and that Plaintiff's allegations related to the Postmaster's alleged behavior are nearly identical to that which he previously asserted." (ECF No. 39-1 at 8). Plaintiff responds that his presently pending case is distinct from *Kirby I* because the August 25, 2021 alleged assault was not referenced in the prior action. (ECF No. 42-1 at 5). He further notes that although the cases "do have similar backgrounds," in *Kirby I* Plaintiff alleged employment discrimination and thus the two cases "are distinctly different and have distinct causes of action and injuries." *Id.*

Plaintiff is correct that *Kirby I* did not involve the August 25, 2021 assault. That, however, is not dispositive of whether "the claims in the second matter are based upon the same cause of action involved in the earlier proceeding." *Serna*, 559 F. App'x at 237. Instead, that inquiry is properly based on whether the claim in the present litigation "arises out of the same transaction or series of transactions as the claim resolved by the prior judgment." *Id.* (quoting *Pittston*, 199 F.3d 694 at 704; *see also Providence Hall Assocs. P'ship v. Wells Fargo Bank, N.A.*, 816 F.3d 273, 282 (4th Cir. 2016) (citations and internal quotations omitted) (explaining the Fourth Circuit adheres to the transactional approach in examining the identity of claims, meaning "res judicata will bar a newly articulated claim if it is based on the same underlying transaction involved in the first suit

---

[9] This Court dismissed *Kirby I* with prejudice, which is a final judgment on the merits. *Walls v. Wells Fargo Bank, N.A.*, 557 F. App'x 231, 233 (4th Cir. 2014) (quoting *In re Tomlin*, 105 F.3d 933, 936-37 (4th Cir. 1997)) ("[D]ismissal of an action with prejudice is a complete adjudication of the issues presented by the pleadings and is a bar to a further action between the parties.").

and could have been brought in the earlier action."). "The expression 'transaction' in the claim preclusion context 'connotes a natural grouping or common nucleus of operative facts.'" *Id.* Factors to be considered in this determination include the claims' "relatedness in time, space, origin, or motivation, and whether, taken together, they form a convenient unit for trial purposes." *Id.*

Having reviewed the operative complaints in *Kirby I* and the present action, there is no question that the two suits arise out the same series of transactions. Plaintiff's claims in both cases are rooted in Kaylor's conduct, and Plaintiff pleads the same allegations in both complaints regarding Kaylor refusing to process his backpay, interfering with his route adjustment, removing the driving portions of his mail route, refusing to allow him to rescind a sick day, lodging baseless disciplinary complaints against Plaintiff, and leveraging the assault charges to induce Plaintiff's retirement. (ECF No. 33 at 9-15); *Kirby I*, 2023 WL 6976069 at *2-3. The alleged assault occurred in August 2021, prior to Plaintiff filing *Kirby I* in August 2022, and thus Plaintiff's current claim certainly could have been raised in the earlier litigation. *See Pueschel*, 369 F.3d at 355-56 (citations omitted) ("[T]he doctrine of res judicata not only bars claims that were actually litigated in a prior proceeding, but also claims that could have been litigated.").

Further, it is of no import that *Kirby I* was an employment discrimination lawsuit, while the present action sounds in tort. The court's focus is on the "core of operative facts" upon which a plaintiff's claims rest, "not the legal labels attached to them[.]" *Serna*, 559 F. App'x at 237. The same facts underlie both lawsuits, and Plaintiff may not resuscitate his earlier claim by simply invoking a new legal theory. *See Walls*, 557 F. App'x at 233 (upholding dismissal based on *res judicata* despite the second lawsuit asserting new causes of action, where both suits were based on the same conduct by defendant); *see also Pueschel*, 369 F.3d at 355-56. To hold otherwise would

17

permit Plaintiff "to frustrate the goals of *res judicata* through artful pleading and claim splitting given that '[a] single cause of action can manifest itself into an outpouring of different claims, based variously on federal statutes, state statutes, and the common law." *Pueschel*, 369 F.3d at 355 (quoting *Kale v. Combined Ins. Co. of Am.*, 924 F.2d 1161, 1166 (1st Cir. 1991)). Thus, the undersigned concludes that even if the Court did not lack of subject matter jurisdiction over this suit under FECA, Plaintiff's claim would nonetheless be barred by *Kirby I* under the doctrine of *res judicata*.

### IV.   CONCLUSION

For the reasons stated, Defendant's Motion to Dismiss Plaintiff's Third Amended Complaint is GRANTED. The Clerk is requested to close this case.

SO ORDERED.

Dated: June 23, 2025

/s/
J. Mark Coulson
United States Magistrate Judge